# EXHIBIT 1

## DIRECTORS AND OFFICERS LIABILITY POLICY
## DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER | RENEWAL OF |
|---|---|---|
| L | HP661770 | NHP656499 |

**●THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.●**

THIS POLICY IS ISSUED BY:   Landmark American Insurance Company (hereinafter referred to as the Insurer)

**ITEM 1.**   INSURED'S NAME AND MAILING ADDRESS                              PRODUCER'S NAME AND ADDRESS

INDEPENDENT ADOPTION CENTER

2300 CLAYTON RD., SUITE 1150

CONCORD, CA 94520

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### ITEM 2. POLICY PERIOD:

FROM _____3/24/2015_____ TO _____3/24/2016_____ 12:01 AM Standard Time at the Insured's address as stated herein

### ITEM 3. LIMIT OF LIABILITY:

$ _____1,000,000_____          Aggregate Limit of Liability each policy period

### ITEM 4. RETENTION:

$ _0_____          Insuring Agreement A

$ _25,000_____          Insuring Agreement B

$ _25,000_____          Insuring Agreement C

$ _50,000_____          Employment Practices Claim

### ITEM 5. PREMIUM:

$ _____

**ITEM 6. POLICY FORM AND ENDORSEMENTS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:**
SEE RSG 200007 0204 - SUPPLEMENTAL DECLARATIONS - SCHEDULE OF ENDORSEMENTS; RSG 211003 0609 - DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION - 2009

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____          March 09, 2015          _____
                                                                 DATE          AUTHORIZED REPRESENTATIVE

A member of Alleghany Insurance Holdings LLC

## DIRECTORS AND OFFICERS LIABILITY POLICY
## SUPPLEMENTAL DECLARATIONS



POLICY NUMBER:   LHP661770

### SCHEDULE OF ENDORSEMENTS

| TITLE | FORM NUMBER |
|---|---|
| Disclosure Pursuant to Terrorism Risk Insurance Act | RSG 204123 0315 |
| Amended Settlement Clause | RSG 204091 1210 |
| California Changes - Cancellation and Nonrenewal | RSG 203005 0611 |
| Coverage Extension - Federal Immigration & Nationality Act | RSG 204159 0210 |
| Exclusion - Amended Bodily Injury and Property Damage | RSG 216014 0609 |
| Exclusion - Malpractice | RSG 206066 0210 |
| Exclusion - Prior Acts | RSG 206069 1009 |
| Exclusion - Prior and or Pending Litigation Backdated | RSG 206071 0204 |
| Exclusion - Sexual Misconduct and Child Abuse | RSG 206076 0204 |
| Full Severability | RSG 214044 0204 |
| Insuring Agreement A - Separate Limit | RSG 204143 0407 |
| Separate Limit - Employment Practices Claim | RSG 204107 0204 |
| Side A Non-Rescindable Coverage | RSG 204136 0606 |
| Sublimit - Defense Expenses - Wage and Hour Claims | RSG 204153 0609 |
| Third Party Liability Coverage | RSG 204119 1011 |

LANDMARK AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT IS ATTACHED TO AND MADE A PART OF THIS POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

| | |
|---|---|
| Terrorism Premium | $0 |

Additional information, if any, concerning the terrorism premium:
The portion of your premium for the policy term attributable to coverage for all acts of terrorism covered under this policy including terrorist acts certified under the Act is listed above.

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations Page.

A.  **Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, the **Insurer** is required to provide the **Insured** with a notice disclosing the portion of the **Insured's** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of the **Insured's** premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations Page.

B.  **Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals eighty-five percent (85%) of that portion of the amount of such insured losses that exceeds the applicable **Insurer's** retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C.  **Cap Insurer Participation in Payment of Terrorism Losses**

If aggregate **Insured** losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met our **Insurer** deductible under the Terrorism Risk Insurance Act, the **Insurer** will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case **Insured** losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

Policy No.: LHP661770        Effective: 3/24/2015

RSG 204123 0315
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDED SETTLEMENT CLAUSE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

SECTION V. – CONDITIONS, A. Duty to Defend is deleted and replaced by the following:

A. **Duty to Defend**

It shall be the right and the duty of the **Insurer** to defend any **Claim** against the **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of its choosing.  No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld.  Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy.  The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into a settlement of any **Claim** that the **Insurer** deems appropriate.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

1. The amount for which the **Insurer** could have settled such **Claim** plus **Defense Expenses** incurred as of the date such settlement was proposed in writing by the **Insurer** ("Settlement Opportunity Amount"); plus

2. Fifty percent (50%) of covered **Loss** in excess of such Settlement Opportunity Amount subject to the policy's Limit of Liability.

In no event shall the **Insurer** be liable under this policy for more than the Limit of Liability shown in Item 3. of the Declarations Page.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770     **Effective:** 3/24/2015

RSG 204091 1210

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, G. Cancellation; Renewal Provision is deleted in its entirety and replaced with the following:

**G.  Cancellation; Renewal Provision**

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at the address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due.  In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice.  The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page.  The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the **Insurer** will retain the customary short rate proportion of the premium hereon.

The **Insurer** shall not be required to renew this policy upon its expiration.  The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

**Nonrenewal**

1.  Subject to provisions of paragraph 2. below, if the **Insurer** elects not to renew this policy, the **Insurer** will mail or deliver written notice stating the reason for nonrenewal to the **Insured Organization** shown in the Declarations Page and to the producer of record, at least sixty (60) days, but not more than one hundred twenty (120) days, before the expiration or anniversary date.

    The **Insurer** will mail or deliver said notice to the **Insured Organization**, and to the producer of record, at the mailing address shown in this policy.

2.  The **Insurer** is not required to send notice of nonrenewal in the following situations:

    a.  If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between the **Insurer** and a member of the **Insurer's** insurance group.

    b.  If the policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with paragraph 1. above.

    c.  If the **Insured Organization** has obtained replacement coverage, or if the **Insured Organization** has agreed, in writing, within sixty (60) days of the termination of this policy, to obtain that coverage.

    d.  If the policy is for a period of no more than sixty (60) days and the **Insured Organization** is notified at the time of issuance that it will not be renewed.

    e.  If the **Insured Organization** requests a change in the terms or conditions or risks covered by this policy within sixty (60) days of the end of the **Policy Period**.

    f.  If the **Insurer** has made a written offer to the **Insured Organization**, in accordance with the timeframes shown in paragraph 1. above, to renew this policy under changed terms or conditions or at an increased premium rate, when the increase exceeds twenty five percent (25%.)

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770     **Effective:** 3/24/2015

RSG 203005 0611

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# COVERAGE EXTENSION – FEDERAL IMMIGRATION & NATIONALITY ACT

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
### DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY

The amount set forth in Item 3. of the Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy.  Subject to the foregoing, the amount of $50,000 shall be the maximum aggregate Limit of Liability of the **Insurer** for **Loss** under this policy in connection with any **Claim** made against any **Insured** based upon, arising out of, or attributable to any actual or alleged violation of the Federal Immigration & Nationality Act, 8 U.S.C. Section 1101, et seq., as amended, including insurable fines or penalties under Section 1324a of that act ("FINA Claim"). This sublimit shall be part of and not in addition to the amount set forth in Item 3. of the Declarations Page.

A Retention in the amount of $50,000 shall apply to any **Loss** arising from a FINA **Claim**.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered pursuant to Insuring Agreement A of this Policy, the Retention normally applicable to Insuring Agreement A shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770     **Effective:** 3/24/2015

RSG 204159 0210

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EXCLUSION – AMENDED BODILY INJURY AND PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – NOT FOR PROFIT ORGANIZATION**

SECTION IV. – EXCLUSIONS, 3. is amended to read as follows:

3. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

   a. Bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; provided, this EXCLUSION 3.a. will not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim**; or

   b. Damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged;

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770    **Effective:** 3/24/2015

RSG 216014 0609

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION - MALPRACTICE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**
**EXCESS LIABILITY POLICY**

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any medical or professional malpractice, including but not limited to the rendering or failure to render any medical or professional service.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770        **Effective:** 3/24/2015

RSG 206066 0210

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PRIOR ACTS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**
**EXCESS LIABILITY POLICY**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** that alleges, arises out of, is based upon or attributable to, directly or indirectly, in whole or in part, any actual or alleged **Wrongful Acts** which first occurred prior to 01/24/2003.

All other terms and conditions of this policy remain unchanged.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PRIOR AND/OR PENDING LITIGATION BACKDATED

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION IV. - EXCLUSIONS, 10. is deleted and replaced with the following:

10. Alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any **Insured** that was commenced or initiated prior to, or pending as of 01/24/2003 D&O; 03/24/2008 EPL, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770      **Effective:** 3/24/2015

RSG 206071 0204

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION - SEXUAL MISCONDUCT AND CHILD ABUSE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to or in any way involving, directly or indirectly, any **Sexual Misconduct**, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

**Sexual Misconduct** means any licentious, immoral or sexual behavior, sexual abuse, sexual assault or molestation or any sexual act against any individual.

All other terms and conditions of this policy remain unchanged.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FULL SEVERABILITY

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – NOT FOR PROFIT ORGANIZATION**

SECTION V. – CONDITIONS, J. Representations is deleted and replaced by the following:

J. **Representations**

The **Insured** represents that the information, particulars, documents, representations and statements contained in the **Application** are complete, true and accurate; are deemed incorporated into and constituting part of this policy; are material to the acceptance of the risk assumed by the **Insurer** under this policy.  This policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**.  If any of the information, particulars, documents, representations and statements contained in the **Application** are untrue, this policy will be void with respect to any **Insured** who knew of such untruth.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770      **Effective:** 3/24/2015

RSG 214044 0204

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# INSURING AGREEMENT A – SEPARATE LIMIT

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

Notwithstanding anything contained in this policy to the contrary, there shall be an addition to the maximum aggregate Limit of Liability available under this policy in the amount of $500,000.  This amount shall be in addition to the Limit of Liability as set forth in Item 3. of the Declarations Page and shall be available solely for **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this policy, and shall be subject to the following additional conditions:

(1) Any **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this policy shall first be paid under the Limit of Liability as set forth in Item 3. of the Declarations Page, and such Limit of Liability must be completely exhausted by payment of **Loss** under SECTION I. INSURING AGREEMENTS A., B., and/or C. of this policy before **Loss** shall be paid under the additional Limit of Liability dedicated for **Insured Persons:** and

(2) The additional Limit of Liability dedicated for **Insured Persons** shall be excess of any insurance available that is specifically excess of this policy and such excess insurance must be completely exhausted by payment of **Loss** thereunder before the **Insurer** shall have any obligation to make any payment on account of the additional Limit of Liability dedicated for **Insured Persons**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770     **Effective:** 3/24/2015

RSG 204143 0407

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## SEPARATE LIMIT - EMPLOYMENT PRACTICES CLAIM

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

The maximum aggregate Limit of Liability with respect to coverage granted for **Employment Practices Claims** shall be $ 1,000,000.  The Limit of Liability for **Employment Practices Claims** shall be in addition to the Limit of Liability set forth in Item 3. of the Declarations Page.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770      **Effective:** 3/24/2015

RSG 204107 0204

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SIDE A NON-RESCINDABLE COVERAGE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

Notwithstanding anything contained in this policy to the contrary, the coverage provided under SECTION I., INSURING AGREEMENT A. shall be non-rescindable by the **Insurer**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770      **Effective:** 3/24/2015

RSG 204136 0606

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SUBLIMIT-DEFENSE EXPENSES – WAGE AND HOUR CLAIMS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

The amount set forth in Item 3. of the Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy.  Subject to the foregoing, this Policy shall allow up to $100,000 solely for **Defense Expenses** in connection with **Claims** made against any **Insured** for violation of the Fair Labor Standards Act or any similar state or local law or regulation specifically governing the payment of wages or hours worked ("**Wage and Hour Claim**").  This sublimit shall be part of and not in addition to the amount set forth in Item 3. of the Declarations Page, and shall not act to create coverage for any form of relief sought or available in any **Wage and Hour Claim**.

A Retention in the amount of $50,000 shall apply to any **Wage and Hour Claim**.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Defense Expenses** in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered pursuant to Insuring Agreement A of this Policy, the Retention normally applicable to Insuring Agreement A shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# THIRD PARTY LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY**

A.  The **Insurer** shall pay for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any **Third Party Discrimination** and/or **Third Party Harassment**.

B.  SECTION III. – DEFINITIONS is amended by adding the following with respect to coverage provided by this endorsement:

1.  **Third Party** means any person(s) with whom an **Insured** interacts.

2.  **Third Party Discrimination** means any discrimination by an **Insured** in his or her capacity as such against a **Third Party** based on such **Third Party's** race, color, creed, religion, age, gender, national origin, sexual orientation or preference, disability, pregnancy or other protected status that is protected pursuant to any applicable federal, state or local statute or ordinance.

3.  **Third Party Harassment** means any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment that is by an **Insured** to a **Third Party**.

C.  SECTION III. – DEFINITIONS, F. **Employment Practices Wrongful Act** is amended to include any actual or alleged **Third Party Discrimination** or **Third Party Harassment** as defined in paragraphs B.2. and B.3. above.

D.  A Retention in the amount of $50,000 shall apply to **Loss** arising from any **Third Party Discrimination** or **Third Party Harassment**.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** which is in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered pursuant to Insuring Agreement A of this Policy, the Retention normally applicable to Insuring Agreement A shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LHP661770        **Effective:** 3/24/2015



# www.RSUIextra.com

## Online Human Resource Loss Prevention Services for Directors and Officers Liability Policyholders

## Key Features

- Best Practice Help Line for call-in assistance
- Checklist database for lowering risk
- Links to important federal and state government sites
- Online library with up-to-date articles on productivity, leadership and loss prevention
- Sample Human Resource policies and forms
- Online reporting function allows the Site Administrator to monitor usage
- Online training modules designed for managers and supervisors with the ability to adapt programs to meet their own needs. Best Practice training modules include:
    - Preventing Sexual Harassment
    - Preventing Discrimination
    - Preventing Wrongful Termination
    - Promoting Ethical Behavior

## How to get started

1. Designate a person to serve as the Site Administrator for your organization.
2. Go to *www.RSUIextra.com*.
3. Click the *Register* link on the left-hand side of the home page.
4. Enter your RSUI policy number as the Passcode/Organization Code (i.e. NHP123456).
5. Complete the Registration Information and click *Submit*.
6. You are now registered as the Site Administrator.

## Who is a Site Administrator?

A Site Administrator is often a person who works with personnel or legal matters and is the person who will oversee the use of *www.RSUIextra.com*. A Site Administrator will have the ability to recruit and add other users as well as make training decisions.

## Questions?

Please click *CONTACT US* at *www.RSUIextra.com* on the upper right hand side of the home page. You will be directed to The McCalmon Group for assistance.

*This site is administered by The McCalmon Group.*



**Landmark American Insurance Company**

**Corporate Office**
945 East Paces Ferry Rd.
Atlanta, GA 30326-1160

# DIRECTORS AND OFFICERS LIABILITY POLICY NOT FOR PROFIT ORGANIZATION

**NOTICE:**   THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE **CLAIMS** FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** THAT ARE REPORTED TO THE **INSURER** DURING THE **POLICY PERIOD**, OR WITHIN SIXTY (60) DAYS THEREAFTER.   THE LIMIT OF LIABILITY AVAILABLE TO PAY **LOSS** SHALL BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF **DEFENSE EXPENSES**.

PLEASE READ YOUR POLICY CAREFULLY

## CLAIM NOTICE

**Mail notices to:**   RSUI Group, Inc.
945 East Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326-1160

**Fax notices to:**   (404) 231-3755
Attn: Claims Department

**E-mail notices to:**   reportclaims@rsui.com

A member of Alleghany Insurance Holdings LLC

# TABLE OF CONTENTS
## DIRECTORS AND OFFICERS LIABILITY POLICY
## NOT FOR PROFIT ORGANIZATION
## PLEASE READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGE**

Item 1. – Named Insured and Address
Item 2. – Policy Period
Item 3. – Limit of Liability
Item 4. – Retention
Item 5. – Premium
Item 6. – Endorsements Attached

**SECTIONS**

I.   **INSURING AGREEMENTS** ................................................................................................. 3

II.  **COVERAGE EXTENSIONS** ............................................................................................... 3
     Marital Estate ........................................................................................................................ 3
     Outside Board Extension ...................................................................................................... 3
     Estates and Legal Representatives ...................................................................................... 3

III. **DEFINITIONS** .................................................................................................................... 3

IV.  **EXCLUSIONS** ................................................................................................................... 6

V.   **CONDITIONS** .................................................................................................................... 7
     Duty to Defend ...................................................................................................................... 7
     Limit of Liability; Retention; Payment of Loss .................................................................... 8
     Notice of Claim or Circumstance.......................................................................................... 8
     Cooperation ........................................................................................................................... 9
     Other Insurance and Indemnification ................................................................................... 9
     Allocation ............................................................................................................................... 9
     Cancellation; Renewal Provision.......................................................................................... 9
     Discovery Period ................................................................................................................. 10
     Merger, Consolidation or Acquisition ................................................................................ 10
     Representations .................................................................................................................. 11
     No Action Against Insurer .................................................................................................. 11
     Subrogation ......................................................................................................................... 11
     Authorization and Notices .................................................................................................. 11
     Changes ............................................................................................................................... 11
     Assignment.......................................................................................................................... 11
     Acceptance .......................................................................................................................... 11
     Headings .............................................................................................................................. 11
     Governing Law Clause........................................................................................................ 11
     Territory ............................................................................................................................... 12
     Priority of Payments............................................................................................................ 12
     Nuclear Exclusion  .............................................................................................................. 13

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION III. - DEFINITIONS.

In consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the **Insurer** agrees:

## SECTION I. - INSURING AGREEMENTS

**A.**  With the **Insured Person** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of such **Insured Person** all **Loss** such **Insured Person** is legally obligated to pay, except and to the extent that the **Insured Organization** is required or permitted to indemnify such **Insured Persons**.

**B.**  With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person**.

**C.**  With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

## SECTION II. - COVERAGE EXTENSIONS

**A.  Marital Estate**

This policy shall cover **Loss** arising from any **Claim** made against the lawful spouse or any legally recognized domestic partner of an **Insured Person** for **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person** (where such status is derived by reason of statutory law or common law) where such **Insured Person** is entitled to coverage under this policy.  Such coverage shall extend to any **Claim** in which a recovery is sought from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner.

Provided, however, that this COVERAGE EXTENSION shall not extend coverage to any **Claim** for, arising from, based upon or attributable to any actual or alleged **Wrongful Act** of the spouse or domestic partner.

**B.  Outside Board Extension**

This policy shall cover **Loss** arising from an **Insured Person** having served, at the direction of and with the consent of the **Insured Organization**, as Director, Officer, or Trustee for any eleemosynary corporation or other not for profit organization where such **Insured Person** is entitled to indemnification by the **Insured Organization**.

This COVERAGE EXTENSION shall be excess of any indemnification and/or insurance that may be permitted or provided by such eleemosynary corporation or organization, regardless of payment made by or on behalf of such eleemosynary corporation or organization, including but not limited to any other Director and Officer Liability Insurance or similar insurance provided for, to, or by any such eleemosynary corporation or organization.

**C.  Estates and Legal Representatives**

This policy shall cover **Loss** arising from any **Claim** made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased, or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, for the **Wrongful Act** of such **Insured Person**.

## SECTION III. - DEFINITIONS

**A.  Application** means the application attached to and forming part of this policy, or any prior policy, including any materials submitted or requested in connection with such application, all of which are deemed a part of this policy.

**B.  Claim,** either in the singular or the plural, means:

1.  A written demand for monetary or non-monetary relief;

2. A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

   a. Receipt or service of a complaint or similar pleading;

   b. Return of an indictment (in the case of a criminal proceeding); or

   c. Receipt of a notice of charges;

3. An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

   The DEFINITION of **Claim** shall include an **Employment Practices Claim**; provided, the DEFINITION of **Claim** shall not include any internal or external labor or grievance proceeding which is pursuant to a collective bargaining agreement.

C. **Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom. **Defense Expenses** however, shall not include:

   1. Remuneration, overhead or benefit expenses associated with any **Insured Person**; or

   2. Any obligation to apply for or furnish any appellate or similar bond.

D. **Employee** means any past, present or future employee of the **Insured Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal, and temporary employee or volunteers of the **Insured Organization**. An individual who is leased or contracted to the **Insured Organization** shall also be an **Employee**, but only if the **Insured Organization** provides indemnification to such leased or contracted individual in the same manner as is provided to the **Insured Organization's** employees.

E. **Employment Practices Claim** means any **Claim** alleging an **Employment Practices Wrongful Act**.

F. **Employment Practices Wrongful Act** means any actual or alleged:

   1. Wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied employment contract;

   2. Employment related harassment (including but not limited to sexual harassment);

   3. Employment related discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

   4. Employment-related retaliation;

   5. Employment-related misrepresentation to an **Employee** or applicant for employment with the **Insured Organization**;

   6. Employment-related libel, slander, humiliation, defamation and/or invasion of privacy;

   7. Wrongful failure to employ or promote;

   8. Wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation, including the giving of defamatory statements in connection with an **Employee** reference;

   9. Employment related wrongful discipline;

   10. Failure to grant tenure or practice privileges;

   11. Failure to provide or enforce adequate or consistent organization policies or procedures relating to employment performance;

   12. Violations of the following federal laws (as amended) including all regulations promulgated thereunder:

       a. Family and Medical Leave Act of 1993;

       b. Americans with Disabilities Act of 1992 (ADA);

       c. Civil Rights Act of 1991;

    **d.** Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990; or

    **e.** Title VII of the Civil Rights Law of 1964 (as amended) and 42 U.S.C. Section 1983, as well as the Pregnancy Discrimination Act of 1978;

**13.** Violation of an **Insured Person's** civil rights relating to any of the above; or

**14.** Negligent hiring, retention, training or supervision, infliction of emotional distress, or violation of an individual's civil rights, when alleged in conjunction with any of the foregoing items 1. through 13.,

whether such **Employment Practices Wrongful Act** as described in 1-14 above is committed directly, indirectly, intentionally or unintentionally, but only if the **Employment Practices Wrongful Act** actually or allegedly pertains to acts committed by an **Insured** and are alleged against an **Insured** by an **Insured Person** or applicant for employment with the **Insured Organization**.

**G.** **Insured** means any **Insured Organization** and/or any **Insured Person**.

**H.** **Insured Organization** means:

    **1.** The organization named in Item 1. of the Declarations Page and any **Subsidiary** existing prior to or at the inception date of this policy; or

    **2.** Subject to SECTION V. - CONDITIONS, I. Merger, Consolidation or Acquisition of this policy, **Insured Organization** shall mean any **Subsidiary** created or acquired after the inception date of this policy; or

    **3.** In the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

**I.** **Insured Person** means any past, present or future director, officer, trustee, **Employee**, or any committee member of a duly constituted committee of the **Insured Organization**.

**J.** **Insurer** means the Company providing this insurance as shown on the Declarations Page.

**K.** **Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**. **Loss** (other than **Defense Expenses**) shall not include:

    **1.** Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

    **2.** Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

    **3.** Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

    **4.** The cost of creating or reinstating employment;

    **5.** Any amounts owed to any **Employee** as wages or compensation previously incurred or vested without regard to any **Claim**;

    **6.** Civil or criminal fines or penalties;

    **7.** Taxes, whether owed to or by any **Insured**;

    **8.** Amounts, including **Defense Expenses**, arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person, or any actual or alleged liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an **Employment Practices Claim**;

    **9.** Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable. For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

**L.** **Personal Injury Wrongful Act** shall mean any actual or alleged:

    **1.** False arrest, wrongful detention or imprisonment, or malicious prosecution;

2. Libel, slander, defamation of character or invasion of privacy;

3. Wrongful entry, eviction or other invasion of the right of occupancy;

4. Infringement of copyright or trademark or other unauthorized use of title; or

5. Plagiarism or misappropriation of ideas.

However, **Personal Injury Wrongful Act** shall not include:

    a. Publication or utterance concerning any organization or business enterprise or its products or services made by or at the direction of an **Insured** with knowledge of the falsity thereof; or

    b. The printing of periodicals, advertising matter, or any or all jobs taken by any **Insured** to be printed for a third party when the periodical, advertising matter or other printing is not a regular part of the **Insured's** own activities.

M. **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations Page or to any earlier policy cancellation or termination date.

N. **Subsidiary** means any entity of which the **Insured Organization**, either directly or indirectly, or through one or more of its **Subsidiaries**:

1. Owns more than fifty percent (50%) of the voting interest; or

2. Has the right to elect or appoint more than fifty percent (50%) of the voting directors or trustees.

A **Subsidiary** ceases to be a **Subsidiary** when the **Insured Organization** no longer owns more than fifty percent (50%) of the voting interest, or no longer has the right to elect or appoint more than fifty percent (50%) of the voting directors, or trustees, either directly or indirectly, or through one or more of its **Subsidiaries**.

O. **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty, or any **Employment Practices Wrongful Act** or **Personal Injury Wrongful Act**, by:

1. An **Insured Person** while acting in his or her capacity as such and on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Person**; or

2. The **Insured Organization**.

## SECTION IV. - EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

1. Based upon, arising out of or attributable to the gaining by any **Insured** of any profit or advantage to which such **Insured** was not legally entitled; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to such **Insured** establishes that the **Insured** gained such profit or advantage;

2. Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** committed such criminal or fraudulent act;

The **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of EXCLUSIONS 1. and 2. above;

3. For actual or alleged bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged; provided, this EXCLUSION shall not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim**;

4. For violation of any of the responsibilities, obligations or duties imposed by: The Fair Labor Standards Act (except the Equal Pay Act) or any state or local statutory or common law, regulation or ordinance that governs payment or administration of wages, hours worked, or employee entitlements; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Worker Adjustment and Retraining Notification Act; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act; any rules or regulations of any of the foregoing promulgated thereunder and amendments thereto; or any similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

5. Alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

6. For the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including but not limited to **Claims** alleging damage to the **Insured Organization**;

   Pollutant includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

7. Brought by or on behalf of any **Insured**, except:

   a. A derivative action brought by or made on behalf of, or in the name or right of, the **Insured Organization,** if such action is brought and maintained independently of, and without assistance, participation or intervention of any **Insured**;

   b. An **Employment Practices Claim** brought by an **Insured Person**;

   c. Any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Insured Organization**, in or after any bankruptcy proceeding by or against an **Insured Organization**;

   d. Any **Claim** brought by any past director, officer, trustee, manager or equivalent executives of the **Insured Organization** who have not served as a director, officer, trustee, manager or equivalent executive for at least five (5) years prior to the date such **Claim** is first made, and if the **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the **Insured Organization** or any **Insured Person** not described in this paragraph 7.d.; or

   e. Any instigation of or involvement in any **Claim**, or solicitation, assistance, active participation or intervention by any **Insured** whistleblower under Section 806 of the Sarbanes-Oxley Act of 2002 or any rule or regulation promulgated thereunder, or under any similar whistleblower statute, rule or regulation under any other federal or state law.

8. Alleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any insurer of a **Claim**, or a potential or threatened **Claim**, or an occurrence or circumstance that might give rise to a **Claim** under any policy of which this insurance is a renewal or replacement or which it may succeed in time;

9. Alleging, arising out of, based upon or attributable to, in whole or in part, the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee;

10. Alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any **Insured** that was commenced or initiated prior to, or was pending at the inception date of this policy, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation;

11. Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement; provided, this EXCLUSION shall not apply to **Defense Expenses** in connection with an **Employment Practices Claim**;

## SECTION V. - CONDITIONS

### A. Duty to Defend

It shall be the right and duty of the **Insurer** to defend any **Claim** against the **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of its choosing. No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld. Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy. The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into the settlement of any **Claim** that the **Insurer** deems appropriate. If the

**Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations;

1. The **Insured** will thereafter be solely responsible for negotiating and defending such **Claim** at their own expense; and

2. Subject to the **Insurer's** aggregate Limit of Liability stated in Item 3. of the Declarations Page, the **Insurer's** liability with respect of any such **Claim** will not exceed the amount for which such **Claim** could have been settled by the **Insurer**, including **Defense Expenses** incurred up to and until the time that the **Insured** refuses to consent to settlement.

**B. Limit of Liability; Retention; Payment of Loss**

1. The Limit of Liability stated in Item 3. of the Declarations Page is the maximum aggregate limit that the **Insurer** will pay for all **Loss** under all INSURING AGREEMENTS combined, arising out of any and all **Claims** first made against the **Insured** during the **Policy Period** and the Discovery Period (if purchased) and reported in accordance with the terms and conditions of this policy.

   The **Insurer** will have no obligation to pay **Loss** or to defend or continue to defend any **Claim** after the aggregate Limit of Liability, stated in Item 3. of the Declarations Page, has been exhausted by payment of **Loss**. **Defense Expenses** shall be part of and not in addition to the Limit of Liability and payment of **Defense Expenses** by the **Insurer** will reduce the Limit of Liability.

2. As a condition precedent to coverage under this policy, the **Insured** shall pay with respect to each **Claim** the applicable Retention amount, as identified in Item 4. of the Declarations Page. The Retention amount shall be reduced solely by covered **Loss** and shall be applied to all **Loss**, including **Defense Expenses**, and the **Insurer** shall only be liable for the amount of **Loss** that is excess of the stated Retention amount.

3. All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 4. of the Declarations Page, and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

4. In the event that a **Claim** implicates more than one of the Retention amounts stated in Item 4. of the Declarations Page, then the largest of the applicable Retention amounts shall be applied, but in no event shall more than one Retention amount be applied to a **Claim**.

5. The Retention amount applicable to SECTION I. - INSURING AGREEMENT A. of this policy, as stated in Item 4. of the Declarations Page, shall not be applicable under any circumstances where indemnification by the **Insured Organization** is permitted or required, regardless of whether the **Insured Organization** has agreed to indemnify an **Insured Person**, provided it shall apply when indemnification cannot be made by the **Insured Organization** by reason of the **Insured Organization's** financial insolvency.

6. The **Insurer's** duty to defend the **Insured** and pay **Defense Expenses** ends upon exhaustion of the Limit of Liability, which includes paying or tendering the Limit of Liability into court.

7. Except for payment of **Defense Expenses**, the **Insurer** shall pay for **Loss** only upon final disposition of any **Claim**.

**C. Notice of Claim or Circumstance**

1. If, during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after such **Claim** is first made, but in no event shall such notice be given later than sixty (60) days after either the expiration date or any earlier cancellation date of this policy.

2. If, during the **Policy Period** or Discovery Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** and, as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**. The written notice shall include, at a minimum:

    a. The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

    b. The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

## D. Cooperation

In the event of a **Claim** or notice of circumstances under SECTION V. - CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insured** will provide the **Insurer** with all information, assistance and cooperation that the **Insurer** reasonably requests, and will take no action, without the **Insurer's** prior written consent, that might prejudice the **Insured's** or the **Insurer's** position, potential or actual rights, or defense under this policy.

## E. Other Insurance and Indemnification

Insurance provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy.  This policy shall be specifically excess over any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

## F. Allocation

If both **Loss** covered under this policy and loss not covered under this policy are jointly incurred either because a **Claim** includes both covered and non-covered matters or covered and non-covered causes of action or because a **Claim** is made against both an **Insured** and any other parties not insured by this policy, then the **Insured** and the **Insurer** shall use their best efforts to fairly and reasonably allocate payment under this policy between covered **Loss** and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.

If the **Insurer** and the **Insured** agree on an allocation of **Defense Expenses**, based on covered and non-covered matters or persons, the **Insurer** shall advance **Defense Expenses** allocated to covered **Loss**.  If there is no agreement on an allocation of **Defense Expenses**, the **Insurer** shall advance **Defense Expenses** that the **Insurer** believes to be covered under this policy until a different allocation is negotiated, arbitrated, or judicially determined.

Any negotiated, arbitrated or judicially determined allocation of **Defense Expenses** on account of a **Claim** shall be applied retroactively to all **Defense Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary.  Any advancement or allocation of **Defense Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other loss on account of such **Claim**.

## G. Cancellation; Renewal Provision

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at the address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due.  In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice.  The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page.  The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the **Insurer** will retain the customary short rate proportion of the premium hereon.

The **Insurer** shall not be required to renew this policy upon its expiration.  The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver to the **Insured Organization** written notice of non-renewal, stating the reasons for non-renewal, at least sixty (60) days prior to the expiration date of this policy.

Any notice of non-renewal will be mailed or delivered to the **Insured Organization's** last mailing address known to the **Insurer**.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**H. Discovery Period**

If the **Insurer** shall refuse to renew this policy or the **Insured Organization** shall cancel or refuse to renew this policy, the **Insured Organization** shall have the right, upon payment of seventy five percent (75%) of the Full Annual Premium, to a period of three hundred and sixty five (365) days following the effective date of such cancellation or nonrenewal (herein referred to as the "Discovery Period") in which to give written notice to the **Insurer** of any **Claim** first made against the **Insured** during said three hundred and sixty five (365) day period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. As used herein, "Full Annual Premium" means the premium stated in Item 5. of the Declarations Page and any additional premium(s) charged during the **Policy Period**. The rights contained in this clause shall terminate unless written notice of such election together with the additional premium due is received by the **Insurer** at the address shown on the Declarations Page within thirty (30) days of the effective date of cancellation or nonrenewal.

The Discovery Period is not cancelable and the additional premium charged shall be fully earned at the inception of the Discovery Period.

The Limit of Liability available under the Discovery Period is part of and not in addition to the Limit of Liability stated in Item 3. of the Declarations Page.

The rights contained in this clause shall not apply in the event of cancellation resulting from non-payment of premium.

**I. Merger, Consolidation or Acquisition**

1. If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets do not exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place on or after the effective date of such creation or acquisition.

2. If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place within the first ninety (90) days after the date of such creation or acquisition. After this ninety (90) day period, the created or acquired **Subsidiary** shall no longer be deemed an **Insured Organization,** unless:

   a. Written notice of the **Subsidiary's** creation or acquisition has been provided to the **Insurer** by the **Insured Organization,** as soon as practicable, and in no event later than ninety (90) days after the date of the creation or acquisition;

   b. The **Insured Organization** has provided the **Insurer** with any additional information the **Insurer** may request;

   c. The **Insured Organization** has agreed to the terms, conditions, exclusions and additional premium charge as may be required by the **Insurer**; and

   d. The **Insurer**, at its sole discretion, has agreed in writing to extend the coverage of this policy to the created or acquired **Subsidiary**.

3. If during the **Policy Period**:

   a. The **Insured Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

   b. Any person or entity or group of persons or entities acting in concert shall acquire an amount of more than fifty percent (50%) of the voting power for the election of directors of the **Insured Organization**;

   (either of the above events in 3. a. or b. are hereunder referred to as the "Transaction" ),

   then this policy shall continue in full force and effect for any **Wrongful Act** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the Transaction. This policy may not be cancelled after the effective time of the Transaction and the premium for this policy shall be deemed fully earned as of such time.

   The **Insured Organization** shall give the **Insurer** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

J. **Representations**

The **Insured** represents that as of the inception date of this policy, the information, particulars, documents, representations and statements contained in, attached or referred to in the **Application** are: complete, true and correct; are the basis of this policy; are deemed incorporated into and constituting part of this policy; and are material to the acceptance of the risk assumed by the **Insurer**. This policy is issued in reliance upon the truthfulness and completeness of such information, particulars, documents, representations and statements. Except for knowledge or information possessed by, or facts or circumstances pertaining to the person or persons who signed the **Application**, no statement or representation in the **Application** or knowledge or information possessed by an **Insured Person** will be imputed to any other **Insured Person** for the purpose of determining the existence or availability of coverage under this policy.

K. **No Action Against Insurer**

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there has been full compliance with all of the terms and conditions of this policy and until the amount of any **Insured's** obligation to pay **Loss** has been finally determined either by judgment against such **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and the **Insurer**.

No **Insured** has any right under this policy to join the **Insurer** as a party to any **Claim** against an **Insured** to determine the liability of such **Insured**, nor shall the **Insurer** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

L. **Subrogation**

In the event the **Insurer** makes any payment under this Policy, the **Insurer** shall be subrogated to all of the rights of recovery of the **Insured**, who shall execute all papers and take all necessary actions to secure such rights, including the execution of any documents necessary to enable the **Insurer** to effectively bring suit in the name of an **Insured**.

M. **Authorization and Notices**

The **Insured Persons** agree that the **Insured Organization** acts on their behalf with respect to giving and receiving all notices and return of premium from the **Insurer**.

N. **Changes**

Notice to any agent or knowledge possessed by any agent or representations by persons acting on behalf of the **Insurer** do not effect a waiver or change in any part of this policy or estop the **Insurer** from asserting any right under the terms, conditions and limitations of this policy. The terms, conditions and limitations of this policy can only be waived or changed by written endorsement.

O. **Assignment**

Assignment of interest under this policy does not bind the **Insurer** without its prior written consent.

P. **Acceptance**

The **Insureds** agree that this policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the **Insurer** relating to this insurance policy.

Q. **Headings**

The description in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

R. **Governing Law Clause**

This policy shall, to the extent permitted by applicable law, be construed in accordance with the laws of the state or jurisdiction of incorporation or organization of the **Insured Organization** or, in the case of matters pertaining to a **Subsidiary**, the laws of the state or jurisdiction of incorporation or organization thereof.

S. **Territory**

This policy shall apply to **Claims** made against any **Insured** anywhere in the world.

**T. Priority of Payments**

With respect to the payment of the policy proceeds, it is agreed that covered **Loss** due under this policy shall be paid by the **Insurer** in the following order of priority:

1. First pay such **Loss** for which coverage is provided under INSURING AGREEMENT A. of this policy;

2. With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT B. of this policy; and

3. With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT C. of this policy.

The **Insured Organization** or its representatives and the **Insurer** shall use their best efforts to agree upon the priority of payment of all **Loss** under this policy. If no agreement is reached regarding the priority of payments, then the **Insurer** and **Insured Organization** will submit the issue of such priority, and only that issue, to binding arbitration.

In **Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.

Secretary

President

THIS EXCLUSION CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NUCLEAR ENERGY LIABILITY EXCLUSION

1.   **Nuclear Exclusion**

It is agreed that this policy does not apply:

a.   Under any Liability coverage, to injury, disease, death or destruction:

(1)   With respect to which an **Insured** under this policy is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its Limit of Liability; or

(2)   Resulting from the **hazardous properties** of **nuclear material** and with respect to which:

(a)   Any person or organization is required to maintain financial protection pursuant to the atomic Energy Act of 1954, or any law amendatory thereof; or

(b)   The **Insured** is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

b.   Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of a **nuclear facility** by any person or organization.

c.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of **nuclear material**, if:

(1)   The **nuclear material**:

(a)   Is at any **nuclear facility** owned by, or operated by or on behalf of an **Insured**; or

(b)   Has been discharged or dispersed there from;

(2)   The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

(3)   The injury, sickness, disease, death or destruction arises out of the furnishing by an **Insured** or services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion applies only to injury to or destruction of property at such **nuclear facility**.

d.   As used in this Exclusion:

(1)   **Hazardous properties** include radioactive, toxic or explosive properties;

(2)   **Nuclear material** means **source material**, special material or **byproduct material**;

(3)   **Source material**, special **nuclear material** and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4)   **Spent Fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

(5)   **Waste** means any **waste** material:

(a)   Containing **byproduct material**; and

(b)   Resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph **(a)** or **(b)** thereof;

(6)   **Nuclear Facility** means:

(a)   Any **nuclear reactor**;

(b)   Any equipment or device designed or used for;

i.   Separating the isotopes of uranium or plutonium;

ii.   Processing or utilizing **spent fuel**; or

      **iii.** Handling, processing or packaging **waste**;

  **(c)** Any equipment or device used for the processing, fabricating or alloying of special **nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**e.** **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or destruction of property, the word *injury* or *destruction* includes all forms of radioactive contamination of property.

# DIRECTORS AND OFFICERS LIABILITY-NOT FOR PROFIT ORGANIZATION RENEWAL APPLICATION



**NOTICE:** THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER DURING THE POLICY PERIOD, OR THE DISCOVERY PERIOD, IF APPLICABLE.  THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS SHALL BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE EXPENSES.

## I.  GENERAL INFORMATION SECTION

1. (a) Name of Organization:

   Independent Adoption Center

   (b) Organization Address:

   2300 Clayton Rd., Suite 1150

   Concord, CA 94520

2. (a) Have there been any changes in the Organization operations within the last twelve (12) months or is the Organization currently contemplating any merger or acquisition? Yes ☐ No ☒
   (If "Yes", please provide details on a separate page)

   (b) Has the Organization acquired or created any Subsidiaries within the last twelve (12) months? Yes ☐ No ☒
   (If "Yes", please provide details on a separate page)

3. Please provide the following financial information for the Applicant and its Subsidiaries:

| | Current Year |
|---|---|
| Date of Financial Statement: | December 31, 2014 |
| Current Assets: | $2,459,182.52 |
| Total Assets: | $2,556,291.07 |
| Current Liabilities: | $278,582.61 |
| Total Liabilities: | $278,582.61 |
| Fund Balance: | $949,302.59 |
| Total Revenues: | $6,537,322.89 |
| Net Income or Net Loss: | $454,428.79 |

## II.  EMPLOYMENT PRACTICES LIABILITY SECTION

1. (a) Number of Employees:

| | Union | | Non-Union |
|---|---|---|---|
| Full time: | 0 | Full time: | 45 |
| Part time: | 0 | Part time: | 12 |
| Total: | 0 | Total: | 57 |

   (b) Total number of Volunteers:  0

2. Does the Organization anticipate making any reductions in the work force within the next twelve (12) months? Yes ☐ No ☒
   (If "Yes", please provide details on a separate page)

3. How many Employees or Officers have been terminated within the last twelve (12) months?
   Number of Employees:  3            Number of Officers:  0

## III. FIDUCIARY LIABILITY SECTION

1.  Please provide the following information for each Plan of the Applicant:

| Plan Name | Type of Plan (DC/DB/other) | Total Plan Assets ($) | Annual Contributions | Number of Participants |
|---|---|---|---|---|
| Independent Adoption Center 403B Plan | DC | $969,923.91 | $62,612.12 | 77 |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

2.  Have there been any mergers of Plans or any Plan terminations during the last 12 months?   Yes ☐   No ☒
    (If "Yes", please provide details on a separate page)

3.  Have the Plans been reviewed within the last 12 months to assure that there are no violations of prohibited transactions and party-in-interest rules?   Yes ☒   No ☐
    (If "No", please provide details on a separate page)

4.  Has any Plan experienced an event reportable to the PBGC?   Yes ☐   No ☒
    (If "Yes", please provide details on a separate page)

The undersigned authorized Officer of the Organization, on behalf of the Organization and its Subsidiaries, and on behalf of the Directors and Officers of the Organization and its Subsidiaries declares that to the best of his/her knowledge and belief, the information, particulars, documents, representations and statements contained in, attached or referred to in this application for insurance and/or as a result of the underwriting process are true and accurate and recognizes that the Insurer, in issuing this policy, will rely on such information, particulars, documents, representations and statements.

Although the signing of this application does not bind the undersigned to effect insurance, the undersigned agrees, on behalf of the Organization and its Subsidiaries, and on behalf of the Directors and Officers of the Organization and its Subsidiaries, that the information, particulars, documents, representations and statements contained in, attached or referred to in this application for insurance and/or as a result of the underwriting process shall be the basis of the contract should a policy be issued and that this application will be attached to and will become part of such policy.   The Insurer is hereby authorized to make any investigation and inquiry it deems necessary in connection with this application.

**NOTE:** This application must be signed by the Chairman of the Board, President or Executive Director and dated within thirty (30) days of the effective date of coverage.

The undersigned authorized Officer agrees that if the information supplied on this application changes between the date of this application and the effective date of the insurance, he/she (undersigned) will immediately notify the Insurer of such changes, and the Insurer may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

Signature _____    Title _____ Executive Directcor _____
(Chairman of the Board, President or Executive Director)

Date _____ 1/22/15 _____    Organization _____ Independent Adoption Center _____

**One copy of each of the following documents is attached and made part of the policy:**

(a) COMPLETE COPY OF LATEST ANNUAL REPORT. IF AUDITED FINANCIALS, PLEASE INCLUDE AUDITORS NOTES

(b) A COPY OF THE MOST RECENTLY FILED FORM 5500 OR MOST RECENT AUDITED PLAN FINANCIAL STATEMENTS

(c) COMPLETE COPY OF BY LAWS AND ARTICLES OF INCORPORATION

(d) CURRENT LIST OF DIRECTORS AND OFFICERS

(e) EEO-1 REPORT (IF REQUIRED BY FEDERAL LAW)

(f) COPY OF EMPLOYMENT APPLICATION AND EMPLOYEE HANDBOOK

Submitted By _____    Date _____ 1/22/15 _____
(Producer)

## SIGNATURE REQUIRED

### NEW YORK FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

_____    1/22/15
Applicant's Signature    Date

## No Signature Required

### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

## ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form.  Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

## CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

## COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

## DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

## FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

## HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

## IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

## INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

## KANSAS FRAUD STATEMENT

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

## KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

## MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

## MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

## MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

## NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

## NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

## NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

## OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

## OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## OREGON FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

## PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

## DIRECTORS AND OFFICERS LIABILITY-NOT FOR PROFIT ORGANIZATION RENEWAL APPLICATION



**NOTICE:** THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER DURING THE POLICY PERIOD, OR THE DISCOVERY PERIOD, IF APPLICABLE. THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS SHALL BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE EXPENSES.

### I. GENERAL INFORMATION SECTION

1. (a) Name of Organization:

Independent Adoption Center

(b) Organization Address:

2300 Clayton Rd., Suite 1150

Concord, CA 94520

2. (a) Have there been any changes in the Organization operations within the last twelve (12) months or is the Organization currently contemplating any merger or acquisition?
(If "Yes", please provide details on a separate page)                           Yes ☐  No ☒

(b) Has the Organization acquired or created any Subsidiaries within the last twelve (12) months?                                                                          Yes ☐  No ☒
(If "Yes", please provide details on a separate page)

3. Please provide the following financial information for the Applicant and Its Subsidiaries:

|                              | Current Year      |
|------------------------------|-------------------|
| Date of Financial Statement: | December 31, 2014 |
| Current Assets:              | $2,459,182.52     |
| Total Assets:                | $2,556,291.07     |
| Current Liabilities:         | $278,582.61       |
| Total Liabilities:           | $278,582.61       |
| Fund Balance:                | $949,302.59       |
| Total Revenues:              | $6,537,322.89     |
| Net Income or Net Loss:      | $454,428.79       |

### II. EMPLOYMENT PRACTICES LIABILITY SECTION

1. (a) Number of Employees:

|            | Union |            | Non-Union |
|------------|-------|------------|-----------|
| Full time: | 0     | Full time: | 45        |
| Part time: | 0     | Part time: | 12        |
| Total:     | 0     | Total:     | 57        |

(b) Total number of Volunteers:  0

2. Does the Organization anticipate making any reductions in the work force within the next twelve (12) months?                                                           Yes ☐  No ☒
(If "Yes", please provide details on a separate page)

3. How many Employees or Officers have been terminated within the last twelve (12) months?
Number of Employees: 3                           Number of Officers: 0

## III. FIDUCIARY LIABILITY SECTION

1. Please provide the following information for each Plan of the Applicant:

| Plan Name | Type of Plan (DC/DB/other) | Total Plan Assets ($) | Annual Contributions | Number of Participants |
|---|---|---|---|---|
| Independent Adoption Center 403B Plan | DC | $969,923.91 | $62,612.12 | 77 |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

2. Have there been any mergers of Plans or any Plan terminations during the last 12 months?    Yes ☐    No ☒
   (If "Yes", please provide details on a separate page)

3. Have the Plans been reviewed within the last 12 months to assure that there are no violations of prohibited transactions and party-in-interest rules?    Yes ☒    No ☐
   (If "No", please provide details on a separate page)

4. Has any Plan experienced an event reportable to the PBGC?    Yes ☐    No ☒
   (If "Yes", please provide details on a separate page)

The undersigned authorized Officer of the Organization, on behalf of the Organization and its Subsidiaries, and on behalf of the Directors and Officers of the Organization and its Subsidiaries declares that to the best of his/her knowledge and belief, the information, particulars, documents, representations and statements contained in, attached or referred to in this application for insurance and/or as a result of the underwriting process are true and accurate and recognizes that the Insurer, in issuing this policy, will rely on such information, particulars, documents, representations and statements.

Although the signing of this application does not bind the undersigned to effect insurance, the undersigned agrees, on behalf of the Organization and its Subsidiaries, and on behalf of the Directors and Officers of the Organization and its Subsidiaries, that the information, particulars, documents, representations and statements contained in, attached or referred to in this application for insurance and/or as a result of the underwriting process shall be the basis of the contract should a policy be issued and that this application will be attached to and will become part of such policy. The Insurer is hereby authorized to make any investigation and inquiry it deems necessary in connection with this application.

**NOTE:** This application must be signed by the Chairman of the Board, President or Executive Director and dated within thirty (30) days of the effective date of coverage.

The undersigned authorized Officer agrees that if the information supplied on this application changes between the date of this application and the effective date of the insurance, he/she (undersigned) will immediately notify the Insurer of such changes, and the Insurer may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

Signature  _Ana Wixon_                                 Title _____ Executive Directcor _____
(Chairman of the Board, President or Executive Director)

Date _____ 1/22/15 _____               Organization _____ Independent Adoption Center _____

**One copy of each of the following documents is attached and made part of the policy:**

(a) COMPLETE COPY OF LATEST ANNUAL REPORT. IF AUDITED FINANCIALS, PLEASE INCLUDE AUDITORS NOTES

(b) A COPY OF THE MOST RECENTLY FILED FORM 5500 OR MOST RECENT AUDITED PLAN FINANCIAL STATEMENTS

(c) COMPLETE COPY OF BY LAWS AND ARTICLES OF INCORPORATION

(d) CURRENT LIST OF DIRECTORS AND OFFICERS

(e) EEO-1 REPORT (IF REQUIRED BY FEDERAL LAW)

(f) COPY OF EMPLOYMENT APPLICATION AND EMPLOYEE HANDBOOK

Submitted By _____               Date _____ **1/22/15** _____
(Producer)

## SIGNATURE REQUIRED

### NEW YORK FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

_Ana Wixon_                                        **1/22/15**
Applicant's Signature                                   Date

## No Signature Required

### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

## ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

## CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

## COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

## DISTRICT OF COLUMBIA FRAUD STATEMENT

WARNING: It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

## FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

## HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

## IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

## INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

## KANSAS FRAUD STATEMENT

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

## KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

## MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

## MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

## MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

## NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

## NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

## NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

## OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

## OKLAHOMA FRAUD STATEMENT

WARNING: Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## OREGON FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

## PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

## IAC BOARD OF DIRECTORS—OCTOBER 2014

**GREG KUHL, President**
Adoptive Parent
Commercial Real Estate Broker
533 Airport Blvd., Ste 400.
Burlingame, CA 94010
Home (650) 574-0340
Work 650) 344-1000
E-mail: gregk@bayareaoffices.com
1st Term: May 2013-May 2016
MALE

**WILLIAM KINNANE, Vice President**
Adoptive Parent
Banking Executive
5415 Northland Dr. #112
Atlanta, GA 30342
Phone: (404) 303-9465
Email: billkinn21@aol.com
1st Term: Oct. 2010-Oct. 2012
2rd Term: Nov. 2012- Nov. 2015
MALE

**CHRISTINE ZWERLING, Secretary**
Adoptive Parent
Compensation Specialist
4548 Toyon Pl.
Oakland, CA 94619
Home 510-531-1727
Email: cmzwerling@yahoo.com
1st Term: June 2011- June 2014
FEMALE

**CAMILLE KING, Treasurer**
Adoptive Parent
Attorney
1326 Everett Street
El Cerrito, CA 94530
Home (510) 215-2724
Work: (510) 685-7948
Email: cking@lovkoandking.com
1st Term: July 2013-July 2016
FEMALE

**DAN WARD, Audit Committee**
Adoptive Parent
Accountant
11 Ashford Place
Martinez, CA 94553
Home (925) 228-7994
Email: dwardjr@gmail.com
1st Term: July 2013-July 2016
MALE

**SUSAN SPARLING**
Adoptive Parent
Former University Administrator
5635 Pinehurst Way
San Luis Obispo, CA 93401
Home (805) 439-2141
Email: ssparling@charter.net
2ND Term June 2014-June 2017
FEMALE

**SARAN POMIANOWSKI**
Adoptive Parent
Former University Administrator
577 Carrick Ct
Sunnyvale, CA 94087
Home (650) 289-0554
Email: saranpomianowski77@gmail.com
1st Term: February 2013-February 2016
FEMALE

**MELISSA REMENTERIA**
Social Worker
14132 SW 154 CT
Miami, Fl., 33196
Home 305-804-2776
Email: melissaarementeria@gmail.com
1st Term: September 2013-September 2016
FEMALE

**NANCY WORRELL**
Adoptive Parent
Human Resources Executive
146 Flame Dr.
Pleasant Hill, CA 94523
Home (925) 689-4579
Email: nancyjharvey@yahoo.com
1st Term: August 2012-August 2015
FEMALE