IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NAVIGATORS INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 18-cv-05504-CRB<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS AND TO DISMISS CLAIM** |

In this motion, Defendant Navigators' Insurance Company ("Navigators") argues that under the terms of its policy, it has no duty to defend its insured, Independent Adoption Center ("IAC"), in a Trustee's Adversary Proceeding ("Trustee's Suit"). See generally Nav. Mot. (dkt. 24). Navigators is correct, for at least two reasons.

## I. Background

IAC was a nonprofit that matched birth mothers with adopting parents and provided related counseling services to adopting parents. Compl. (dkt. 1) ¶ 11. Plaintiff Landmark American Insurance Company ("Landmark") issued a D&O policy to IAC that was in effect from March 24, 2015, to March 24, 2016 ("Landmark Policy"). Id. ¶ 8; id. Ex. 1. Navigators issued the D&O policy that began as soon as Landmark's ended; it was in effect from March 24, 2016 to March 24, 2017 ("Navigators Policy"). Id. ¶ 9; id. Ex. 2.[1]

---

[1] A third policy, issued by Defendant Philadelphia Indemnity Insurance Company ("Philadelphia"), provided IAC with professional liability insurance between July 10, 2015 and July 10, 2016 ("Philadelphia Policy"). See id. ¶ 10; id. Ex. 3. It is the subject of a second pending motion, and a separate order.

In January of 2016, during the Landmark Policy, the California Department of Social Services issued a Complaint Investigation Report ("CDSS Report") "regarding a complaint made to the agency that IAC was not financially able to provide the services which it offers." Id. ¶ 13; id. Ex. 4. The CDSS Report stated that "an investigation was going to be conducted regarding" the allegation. Id. Ex. 4 at 5. The CDSS investigation triggered IAC to give Landmark a "notice of circumstances." See Nav. Mot. at 2; Opp'n to Nav. Mot. (dkt. 34) at 6; RJN Ex. C (dkt. 22-3) (Declaration of Landmark counsel filed in Bankruptcy Court) at ¶ 3 ("Before the Landmark D&O Policy expired, IAC gave notice of an administrative complaint about IAC made to [CDSS] by two adopting parents, clients of IAC. In accordance with the provisions of the Landmark D&O Policy, the notice of circumstances preserved coverage for any Claims made after the Policy expiration that arose from those circumstances reported to Landmark during the Policy Period.").[2]

On February 3, 2017, IAC filed for bankruptcy under Chapter 7. See Compl. ¶ 15. On March 21, 2017, during the Navigators Policy, the Bankruptcy Trustee initiated the Trustee's Suit against seven of IAC's former directors and an officer. Id. ¶ 16. The Trustee also sued Navigators, alleging that the Navigators Policy covered the directors' and officers' liability. Id. On January 16, 2018, the Trustee filed a First Amended Complaint ("FAC"), which is the operative complaint in the Trustee's Suit. Id. ¶ 17; RJN Ex. A (FAC).[3]

The FAC alleges that IAC's business model depended on the formation of new contracts with adopting parents, as well as the availability of birth mothers. FAC ¶¶ 34–35. It alleges that, in or before 2016, there was a decline in both the availability of birth mothers and new contracts with adopting parents, leading to a disruption in the business model and "a financial crisis that demanded that the Director Defendants and Officer

---

[2] Although Landmark objects to the Court taking judicial notice of Exhibits B through G, see Opp'n to Nav. Mot. at 8 n.1, this declaration is a statement by a party opponent and not hearsay, see Fed. R. Evid. 801(d)(2). Nor could Landmark in good faith deny that it received notice of the CDSS report during its policy period.
[3] The Court can take notice of the FAC as it is incorporated by reference in the Complaint. See United States v. Richie, 342 F.3d 903, 907–08 (9th Cir. 2003).

2

Defendants take action." Id. ¶¶ 36–37. The FAC alleges that "a confluence of events" triggered IAC's financial crisis, including: IAC's difficulty locating birth mothers; an extended time period for locating babies; a decrease in the number of new contracts with adopting parents; a rise in overhead; adopting parents complaining that IAC was not providing the services promised; IAC relying on financial reserves; IAC losing money each month, with no turnaround in sight; and insufficient assets. Id. ¶ 38. The FAC further alleges that IAC had obligations to hundreds of adopting parents who had paid for adoption services but had not been provided with a child, and hundreds of adopting parents who had. Id. ¶¶ 39–40. It alleges that IAC continued to seek and accept fees from newly signed adopting parents, though the directors and officers "knew or should have known that [IAC] could not perform its outstanding obligations to adopting parents who had already paid the Debtor for adoption services." Id. ¶ 42. The FAC alleges that IAC did not give adopting parents or government regulators advance notice of its closure, and did not take steps to deal with its confidential adoption records. Id. ¶¶ 46, 47, 49. And the FAC alleges that IAC's directors and officers were not knowledgeable about applicable laws and regulations governing the closure of its operations, and shut down without seeking to comply with them. Id. ¶¶ 50–51. The FAC bring claims for breach of fiduciary duty, negligence, and declaratory relief. See generally id. It seeks over $7.8 million in damages. Id. at 18.

The directors' and officer's defense in the Trustee's Suit was tendered to Navigators, and later to Philadelphia and Landmark. Compl. ¶ 22. Navigators assigned counsel for IAC. Id. ¶ 23. In a letter on July 8, 2017, Landmark agreed to defend the directors and officer under a reservation of rights, stating:

> IAC gave notice of circumstance during the Policy Period in the form of the CDSS Report prompted by a complaint that IAC was not financially able to render the offered services, such that any Claim later made arising out of such facts or circumstances will be deemed first made during the Policy Period. The Trustee's Complaint alleges that IAC had financial difficulties and did not render services to its clients. <u>To that extent, the Trustee's Complaint shares facts or circumstances in common with the acts or circumstances</u>

3

>> alleged in the CDSS Report. However, the Trustee's Complaint alleges numerous other facts and circumstances not alleged in the CDSS Report. . . .

Nav. Mot. Ex. A at 12 (emphasis added).[4] Navigators stated on July 10, 2017 that it "continues to stand by its position that [an] exclusion . . . precludes coverage . . . of this matter" and "intends to seek a declaration that coverage does not exist for this matter under the Policy," but that, "[i]n the meantime, Navigators will continue to provide the insureds with a defense subject to a full reservation of all of its rights." Compl. ¶ 24; Compl. Ex. 5 (Navigators 7/10/2017 letter); see also Compl. Ex. 6 (Navigators 7/12/2017 letter). Subsequently, Navigators advised that it was withdrawing from IAC's defense. Compl. ¶ 26. The Trustee's Suit is ongoing. Id. ¶ 33.

Landmark brought this suit against Navigators and Philadelphia, "seeking a declaration of rights of two liability insurers as to the defense of directors and officer[]" in the Trustee's Suit, id. ¶ 1, and alleging that "each Defendant with a duty to defend should be required to reimburse Landmark and ordered to contribute its equitable share," id. ¶ 43. Navigators moves for a judgment on the pleadings on the request for declaratory relief and moves to dismiss the claim for contribution. See Nav. Mot.

## II. Legal Standard

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted). When a party invokes Rule 12(c) to raise the defense of failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6). Wood v. Cnty. of Alameda, 875 F. Supp. 659, 661 (N.D. Cal. 1995). "A dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved. . . .'" McGlinchy

---

[4] This reservation of rights is incorporated by reference in the Complaint and is thus judicially noticeable. See Compl. ¶ 25.

v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) (citing Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserts that the complaint fails to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of evaluating a motion to dismiss, a court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**III. Discussion**

A liability insurer owes a duty to defend when a suit brought against its insured seeks damages that potentially fall within the policy's coverage. Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 19 (1995). "Where there is no possibility of coverage, there is no duty to defend." Id. (internal quotation marks omitted). "To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." Montrose Chem. Corp. of Calif. v. Sup. Ct., 6 Cal. 4th 287, 301 (1993). To determine whether an insurer owes a duty to defend, a court is to "compar[e] the allegations of the complaint with the terms of the policy." Id.

Navigators contends that, based on the terms of its policy, it does not have a duty to defend IAC in the Trustee's Suit. Navigators offers three independent reasons: (A) its Policy Endorsement 4 excludes coverage; (B) its Policy Exclusion B excludes coverage; and (C) the Trustee's Suit is a claim first made before the Navigators Policy period. Clearly the first two reasons are correct.

### A. Policy Endorsement 4

The Navigators' Policy includes a "Specific Circumstances Exclusion Endorsement," also known as Endorsement 4, which specifically excludes coverage for claims "based upon, arising out of, relating to, directly or indirectly resulting from, or in any way involving" the CDSS Report. See Compl. Ex. 2 (Navigators Policy) at 32 of 35. This language is extremely broad, as courts have recognized. See Hill Rogal & Hobbs Ins. Servs. of Cal., Inc. v. Indian Harbor Ins. Co., 379 Fed. App'x 609, 610–11 (9th Cir. 2010) ("based on, directly or indirectly resulting from, in consequence of, or in any way involving" language is "broad" and not ambiguous); Tricor Am., Inc. v. Ill. Union Ins. Co., 351 F. App'x 225, 227 (9th Cir. 2009) (endorsement with the phrase "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving" "is plainly intended broadly to exclude coverage").

Although Navigators' motion argues that each of the "based upon," "arising out of," "relating to," and "in any way involving" standards are met, see Nav. Mot. at 4–9, Navigators only needs one, and "in any way involving" is the broadest, see Columbia Cas. Co. v. Abdou, No. 15-cv-80-LAB (KSC), 2015 U.S. Dist. LEXIS 169036, at *8 (S. D. Cal. Dec. 16, 2015) (holding that "in any way involving" "is 'language that would only be included to maximally expand the enumerated categories of acts that are excluded from coverage.'") (quoting Nat'l Bank of Cal. v. Progressive Cas. Ins. Co., 938 F. Supp. 2d 919, 931 (C.D. Cal. 2013)); see also id. at *9 (claims thus excluded "if they include even a minimal or incidental relationship.").

Of course the Trustee's Suit "in any way involv[es]" the CDSS Report. CDSS was investigating the allegation that IAC was "not financially able to provide the services which it offers." Compl. Ex. 4. The Trustee's Suit elaborates on this same allegation. Many of the allegations in the FAC explicitly mention IAC's financial woes. See, e.g., FAC ¶ 37 (decline in birth mothers and number of new adopting parents "[led] to a financial crisis that demanded that the Director Defendants and Officer Defendant take action"); id. ¶ 38 (listing causes of "[t]he financial crisis"); id. ¶ 43 (bankruptcy petition);

6

United States District Court
Northern District of California

id. ¶ 44 (at time of petition, hundreds of adopting parents who had paid adoption fees "had not yet been able to adopt a child"). The FAC's allegations against the directors and officer largely pertain to mismanagement in the face of financial crisis. See, e.g., FAC ¶ 61 ("(n) failed to timely acknowledge that [IAC] was facing a financial crisis that threatened the existence of [IAC]"; "(o) failed to call and conduct Board and management meetings for the purpose of identifying the financial crisis of the Debtor and taking action to solve the crisis"; "(p) failed to document . . . the efforts made to resolve [IAC's] financial crisis"; "(s) failed to properly plan and budget for future operations in light of the Debtor's financial circumstances in 2015 and 2016."). The FAC also accused the directors and officers of failing to perform the services it offered adopting parents during this financial crisis. See, e.g., FAC ¶ 38 ("adopting parents complained that the Debtor was not providing the services promised in the contracts signed by adopting parents"); id. ¶ 61 ("(e) failed to take action to refund advances paid by adopting parents when it was clear that [IAC] would not continue to fulfill its obligations to adopting parents"; "(g) failed to find options for fulfilling [IAC's] obligations under contracts with adopting parents"; "(h) failed to take steps to cut overhead expenses in order to fulfill obligations to adopting parents"; "(j) failed to use [IAC's] assets to make refunds to adopting parents or locate other services to fulfill obligations to adopting parents"; "(m) failed to take steps via Chapter 11 . . . to fulfill the obligations of [IAC] to adopting parents"; "(q) failed to identify and fulfill [IAC's] outstanding obligations to hundreds of adopting parents"; "(r) failed to quantify . . . the true measure of outstanding obligations that [IAC] owed to adopting parents"; "(x) failed to provide earlier notice to adopting parents that [IAC] would not fulfill its obligations"; "(z) failed to take steps in 2016 to minimize the . . . emotional hardship to adopting parents.").

Because the CDSS report stemmed from the allegation that IAC was "not financially able to provide the services which it offers," Compl. Ex. 4, and the Trustee's Suit includes numerous allegations about IAC not providing the services it offered in light of its financial crisis, the latter "involv[es]" the former. Landmark essentially admitted as

7

much. See Nav. Mot. Ex. A (July 8, 2017 Landmark reservation of rights letter) at 12 ("the Trustee's Complaint shares facts or circumstances in common with the acts or circumstances alleged in the CDSS Report."). Certainly the Trustee's Suit also includes additional allegations not implicated by or spelled out in the much shorter CDSS Report. See Opp'n to Nav. Mot. at 16–17. This is irrelevant. Nothing in the endorsement limits the "in any way involving" language in the way Landmark suggests.[5] And the cases Landmark relies on to argue that "courts have held that where the second claim involved different or additional acts . . . the two claims are not deemed related," id. at 13, simply do not analyze the same language or circumstances. See, e.g., Eureka Fed. Sav. & Loan Assoc. v. Am. Cas. Co., 873 F.2d 229, 234–35 (9th Cir. 1989) (holding, in "arising out of" case, that "mere existence of an aggressive loan policy is insufficient as a matter of law to transform disparate acts and omissions made by five directors in connection with issuance of loans to over 200 unrelated borrowers into a single loss."); Certain Underwriters at Lloyd's of London v. FDIC, 723 Fed. Appx. 764 (11th Cir. 2018) (noting that case did not involve "arising out of" language and distinguishing Zucker v. United States Specialty Ins. Co., 856 F.3d 1343 (119th Cir. 2017), which excluded coverage because insolvency "arose out of" wrongful acts that occurred before the policy period). In Marcus & Millichap Real Estate Inv. Svcs, Inc. v. Indian Harbor Ins. Co., No. CV 09-7128-GW(JEMx), 2009 WL 10676206, at *4 (C.D. Cal. Dec. 17, 2009), another case Landmark relies on, see Opp'n to Nav. Mot. at 15, a judge in the Central District held that allegations based on common facts would be excluded, while allegations of a common scheme would not necessarily. Here, IAC's financial inability to offer the services offered is a common fact.

Accordingly, Navigators' Endorsement 4 excludes coverage for the Trustee's Suit.

**B.      Policy Exclusion B**

The Navigators' Policy also includes an Exclusion B, which states that Navigators

---

[5] Nor does Landmark's argument at the motion hearing, that the Navigators policy allows for allocation, make a difference. The additional allegations in the FAC nonetheless "in any way involv[e]" the CDSS Report. Accordingly, no allocation is warranted.

8

"will not be liable . . . to make any payment of any Loss in connection with any Claim made against any Insured . . . based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or <u>in any way involving</u> any Wrongful Act or Related Wrongful Act or <u>any fact, circumstance or situation which has been the subject of any notice given</u> under any other policy of which this Coverage Part is a renewal or replacement." See Compl. Ex. 2 (Navigators Policy) at 17 of 35 (emphasis added).

Navigators asserts that Landmark received notice of the CDSS investigation when its policy was in effect, and that the Navigators Policy replaced the Landmark Policy. See Nav. Mot. at 9; RJN Ex. C (Declaration of Landmark counsel filed in Bankruptcy Court) at ¶ 3 ("Before the Landmark D&O Policy expired, IAC gave notice of an administrative complaint about IAC made to [CDSS]"). Landmark does not dispute these facts. Navigators also argues that the Trustee's Suit "does indeed involve the very same fact, circumstance, or situation the CDSS investigated: IAC's financial inability to perform its services." Nav. Mot. at 10. It further notes that the exclusion only requires that the Trustee Suit share "any fact" with the allegation CDSS investigated. Id. In keeping with the analysis above, the Court agrees that the Trustee's Suit "involv[es]" the fact of IAC's inability to perform services in light of its financial circumstances, which was the subject of a notice given under the Landmark Policy.

Accordingly, Navigators' Exclusion B independently excludes coverage for the Trustee's Suit.

### C. Claim First Made

Finally, the Navigators Policy states that "[a]ll Claims involving the same Wrongful Act or Related Wrongful Act of one or more Insureds will be considered a single Claim, and will be deemed to have been made on the earlier of" either (1) "the earliest date on which any such Claim was first made" or (2) "the earliest date on which any such Wrongful Act or Related Wrongful Act was reported" under the Navigators Policy "or any other policy providing similar coverage." See Compl. Ex. 2 (Navigators Policy) at 11 of 35. In addition, the Navigators Policy requires that a Claim be "first made against an

9

Insured during the Policy Period." Id. at 15 of 35. Navigators argues that this language excludes coverage for the Trustee's Suit. Nav. Mot. at 13–15. The Court does not reach this argument, as it bases its holding on the first two arguments.

IV. **Conclusion**

For the foregoing reasons, the Court GRANTS the motion, because both Policy Endorsement 4 and Policy Exclusion B exclude coverage for the Trustee's Suit.

**IT IS SO ORDERED.**

Dated: December 14, 2018

_____
CHARLES R. BREYER
United States District Judge